## Commonwealth v. Doby

*C. H. Harry*, assistant district attorney, for Commonwealth.

*H. A. Davenport*, for petitioner.

*R. Trucksess*, for comptroller.

DANNEHOWER, J., June 21, 1954.—Arnold Williams, recognizor for defendant, Charles Doby, has petitioned the quarter sessions court to remit or moderate a recognizance forfeited because defendant failed to appear for trial. Answers to this petition have been filed by the district attorney and comptroller.

The facts as gathered from the petition, answers thereto and depositions disclose that on March 14, 1953, Arnold Williams, petitioner, entered security in the amount of $500, conditioned upon defendant's appearance on April 7, 1953, to answer the criminal charge of "Operating a Motor Vehicle without the consent of the Owner"; that on April 7, 1953, defendant failed to appear and the bond was forfeited and a bench warrant issued; that petitioner received notice of forfeiture from the county commissioners and in September 1953 paid $500 in two installments; that recognizor made reasonable efforts to locate defendant and spent $342 in traveling, sheriffs, and other expenses in order to apprehend him. Through his efforts defendant was located in prison in Akron, Ohio, and recognizor and his attorney brought defendant from Ohio and delivered him to the Montgomery County Prison. On April 9, 1954, defendant pleaded guilty and was sentenced to pay a fine of $500, the costs, and undergo imprisonment in the Montgomery County Prison for a period of not less than one and one-half years or more than three years. On April 30, 1954, recognizor filed his petition that the forfeiture be remitted or moderated according to equity and the acts of assembly.

The following are the two relevant statutes which govern the power and authority of the court to remit or moderate forfeited recognizances:

"All recognizances forfeited in any court of quarter sessions of the peace within this commonwealth, or in the sessions held for the city of Philadelphia, shall and may be sued for and be recoverable in the court of common pleas of that county in which the said recognizances shall be forfeited respectively, which courts may, and they are hereby empowered to order the said recognizances to be levied, moderated or remitted, on hearing the circumstances of the case, according to

equity and their legal discretion. 1783, Dec. 9, 2 Sm. L. 84, §2.": 8 PS §171.

"In all cases where the county commissioners of any county shall collect, or have collected, any money upon any forfeited recognizance, duly estreated to such county commissioners by the clerk of the proper court and the same has been paid into the county treasury, and where the defendant in such case subsequently surrenders himself or herself to the jurisdiction of the proper court, or is subsequently apprehended and returned to the jurisdiction of the court, the county commissioners may, (a) with the consent of the district attorney, and (b) shall upon order of court in any case, repay to the party from whom such money was collected the amount so collected on such forfeited recognizance, exclusive of all costs paid or incurred by the county in such proceeding. 1917, July 11, P. L. 802, §1; 1931, May 13, P. L. 131, §1.": 8 PS §177.

It is argued by the controller that the Act of 1783 is not available because: (1) Defendant is a professional bail-goer for hire: Commonwealth v. Nestor, 1 Lehigh 225 (1905).; (2) the quarter sessions court has no jurisdiction since the act specifically confers jurisdiction upon the courts of common pleas; (3) application was not made before judgment was entered on the forfeiture or before the money was collected: Commonwealth v. Davis et al., 15 D. & C. 395 (1930), and, (4) the court has no jurisdiction over the forfeiture since the money was never in court, having been voluntarily paid to the comptroller for the county: Commonwealth v. Meyers, 13 Lehigh 110 (1928).

A review of the cases involving the aforementioned points discloses that only the fourth restriction has actually been held to preclude a recognizor from availing himself of the discretionary power of the court conferred upon it by the Act of 1783.

In Commonwealth v. Nestor, supra, while the court did mention that the petitioner was a "professional bail-goer for hire", it further pointed out that he had received from defendant a sizable portion of the forfeiture and had failed to disclose this fact to the court. Therefore, while the professional character of the recognizor may be one factor among the many a court must consider when exercising its discretionary powers, it cannot be said this, in and of itself, would preclude all possibility of recovery, particularly where the statute begins with the language "All recognizances . . .", and neither qualifies nor restricts this throughout the body of the act.

As to whether or not the courts of common pleas have exclusive jurisdiction, it has been held that the quarter sessions has concurrent jurisdiction with the common pleas with regard to the remission or moderation of forfeitures: Commonwealth v. Phillips, 8 Kulp 239, 14 Lanc. 357 (1896).

The requirement that the application be made before the money has been collected and before judgment has been entered, while present in the Act of July 30, 1842, P. L. 449, sec. 25, 8 PS §179, which deals with an entirely different problem, is not apparent from a reading of the Act of 1783. Nevertheless, in Commonwealth v. Becker, 1 Wood 297 (1866), the court said that even applications under the Act of 1783 must precede the collection of money and judgment. However, the court later indicated that "symmetry of practice, convenience to the court, certainty in our records . . ." were the ends sought by such an interpretation. In matters involving the broad discretionary power of the court where there is again no restrictive language in the statute which confers this power, it is doubtful that this factor alone would preclude a court from exercising it in an otherwise proper case.

Finally, on the question of whether or not the fact that the moneys were voluntarily paid to the county might prevent a recognizor from availing himself of the Act of December 9, 1783, P. L. 84, the court in Commonwealth v. Meyers, supra, said at page 111:

"But this fund is not in court and never was here. It was voluntarily paid by petitioner to the county and remains in 'the county stock', as an old Act of the General Assembly describes the treasury, Act September 23, 1791 (3 Sm. L. 43). And there it must remain unless the petitioner can point to an act which expressly or by necessary implication authorizes us to order a refund. Wayne Co. v. Waller, 90 Pa. 99. Failing in that, his only recourse is evidence that 'the Almighty has commanded it'. (Richardson v. Clarion Co., 14 Pa. 198, 200) but we have not found the statute nor heard the command."

On the basis of this case, petitioner cannot avail himself of the Act of 1783, since it appears that here as well the court similarly never had jurisdiction over the forfeited money. Had the money been paid into court and by it paid to the county, it would then be possible in a proper case to order remission or moderation. This limitation upon the availability to petitioner of the Act of 1783 seems insurmountable and we are therefore powerless to remit or modify in a situation where the moneys have been paid voluntarily.

It is thus necessary to consider whether or not petitioner can avail himself of the Act of July 11, 1917, P. L. 802, and if so, whether or not there is sufficient equity in his case to warrant a remission or moderation. This act deals with situations where a defendant, after forfeiture, surrenders himself or is apprehended and returned to the jurisdiction of the court. While this act is more restrictive than the Act of December 9, 1783, P. L. 84, in that it requires the return of a defendant, it is considerably broader in that it cannot

be interpreted as requiring that the forfeiture have been paid into court. Instead, it recites that:

"In all cases where the county commissioners . . . shall collect, or have collected, any money upon any forfeited recognizance . . . and the same has been paid into the county treasury . . . the county commissioners . . . . shall upon order of the court in any case, repay to the party from whom such money was collected. . . ." .

. It, therefore, appears that petitioner can avail himself of the Act of July 11, 1917, P. L. 802, and that it remains only for the court to determine whether or not his case is sufficiently meritorious and deserving.

Recognizor's petition and supporting depositions indicate that he made every reasonable effort to locate defendant and present him for trial as originally scheduled, even contacting the police in Aliquippa, Pa., the home of defendant's brother. Failing in this effort, petitioner then began a series of investigations in an attempt to bring about the return of defendant. At a personal expense of $132.85, petitioner sent his attorney to Aliquippa, Pa., in search of defendant. Defendant's attorney paid the Sheriff of Montgomery County $50 which petitioner is obligated to pay. Further, upon learning of defendant's whereabouts, petitioner paid his attorney $132 in order for him to proceed to Ohio where defendant had been apprehended, for the purpose of arranging for his return to this county.

It, therefore, appears that petitioner, acting at all times in good faith, did all that could reasonably be expected of him to present defendant at his trial as initially scheduled, and thereafter, at great personal expense, exerted every possible effort to locate defendant. Further, it was in fact greatly due to petitioner's efforts that defendant was eventually returned to this jurisdiction and is currently serving a sentence of

from not less than one and one-half years and not more than three years in the Montgomery County Prison. Finally, since this petition was filed 17 days after defendant was sentenced, it can be said that petitioner acted with due diligence. It is, therefore, the duty of this court, in the exercise of its discretion and for the foregoing reasons, to order a remission of the forfeiture exclusive of the costs of trial which are in the amount of $99.73 and which, as of this day, remain unpaid.

### Order

And now, June 21, 1954, for the foregoing reasons, it is ordered and decreed that the order of forfeiture of said recognizance be moderated and that $99.73, representing the entire costs of the trial be declared forfeited and judgment is entered on the recognizance in that amount. The remainder of the heretofore forfeited recognizance, to wit the sum of $400.27, is hereby remitted and ordered to be paid by the county commissioners, comptroller, and county treasurer, to the person from whom such money was collected, namely: Arnold Williams.